IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

JEFFREY MATHER,

    Plaintiff,

v.

MCELROY TRUCK LINES, INC.,

    Defendant.

       CIVIL NO.: WDQ-06-3010

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

MEMORANDUM OPINION

Jeffrey Mather, a commercial truck driver, sued McElroy Truck Lines ("McElroy"), his former employer, for violations of the Americans with Disabilities Act[1] (the "ADA") and the Family and Medical Leave Act[2] (the "FMLA"); tortious interference with economic relations under Maryland law; and false light under Maryland law.  The action arises out of the employment relationship between Mather and McElroy.

Pending is McElroy's motion to dismiss or, in the alternative, for summary judgment.  For the reasons discussed below, the motion will be granted as to Count III and IV and denied as to Counts I and II.

---

[1] 42 U.S.C.A. § 12101 *et seq.*

[2] 29 U.S.C. § 2601 *et seq.*

1

I.   Background

In October 2004, Mather began working for McElroy as a commercial truck driver.  Compl. ¶ 7.  Mather's job performance had warranted: (1) his training of new drivers; (2) his inclusion in a corporate advertisement; and (3) an offer for a promotion. *Id*.

In August 2005, Mather was diagnosed with Type 1 diabetes, which has since been rediagnosed as Type 2 diabetes.  *Id*. ¶ 8. Mather alleges that his diabetes substantially limits major life activities.  *Id*. ¶ 11.  Mather immediately informed McElroy of his diagnosis and, shortly thereafter, in October 2005, although Mather had informed McElroy that time off would permit control of his diabetes, McElroy allegedly terminated him.  *Id*. ¶ 8.

At the time of Mather's termination, federal regulations restricted the ability of diabetics to operate interstate commercial vehicles.  *Id*. ¶ 9.  However, an exemption program exists and after his termination Mather obtained such an exemption.  *Id*.

After Mather's termination, McElroy allegedly interfered with Mather's ability to obtain unemployment benefits by falsely representing that McElroy had not terminated him and that he had instead quit his job.  *Id*. ¶ 13.  McElroy also allegedly jeopardized Mather's purchase of a home, *id*., and continued to use the advertisement featuring Mather.  *Id*. ¶ 36.

2

II.   Analysis

A.   Standard of Review

Under Rule 12(b)(6), a motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)), *Mylan Laboratories, Inc. v. Raj Matkari, et al.*, 7 F.3d 1130, 1134 (4th Cir. 1993).  All allegations are treated as true, and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan*, 7 F.3d at 1134.

In deciding a Rule 12(b)(6) motion, the Court will consider the facts stated in the complaint and any attached documents. *Biospherics, Inc., v. Forbes, Inc.*, 989 F.Supp. 748, 749 (D. Md. 1997) *aff'd* 151 F.3d 180 (4th Cir. 1998).  The Court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action.  *Id.*

The Court may, at its discretion, alternatively treat the motion as one for summary judgment.  Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict

3

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The opposing party, however, must produce evidence upon which a reasonable fact finder could rely.  *Celotex*, 477 U.S. at 317.  The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

B.    The ADA Claim

The ADA prohibits discrimination against a qualified individual with a disability because of the disability with respect to, *inter alia*, "job application procedures, the . . . advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a). To demonstrate a violation of the ADA, Mather must prove that: (1) he had a disability; (2) he was otherwise qualified for the employment or benefit in question; and (3) McElroy excluded him from the employment or benefit due to discrimination solely on the basis of his disability.  *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995).

McElroy disputes whether Mather's diabetes is a disability under the ADA.  Under the ADA, a disability includes: "(A) a

4

physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  As "[t]he existence of a disability is to be determined on a case-by-case basis" *Rose v. Home Depot U.S.A., Inc.*, 186 F.Supp.2d 595, 612 (D. Md. 2002), it is too early in the litigation to conclude as a matter of law that Mather's diabetes is not a disability.[3]

McElroy also disputes whether Mather is a qualified individual with a disability under the ADA.  A qualified individual with a disability is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8). McElroy argues that Mather was not otherwise qualified for the employment in question because federal regulations precluded Mather from driving a commercial truck.  49 C.F.R. 391.41(b)(3) ("A person is physically qualified to drive a commercial motor vehicle if that person . . . [h]as no established medical history or clinical diagnosis of diabetes mellitus currently requiring

---

[3] The Court notes the incongruity in Mather's argument that his diabetes is sufficiently controlled to allow resumption of commercial truck driving, but it substantially limits one or more of his major life activities.  However, even if Mather is not disabled under (A) or (B) above, he has alleged that he is disabled under (C) by alleging that McElroy regarded him as being disabled.  Compl. ¶¶ 12, 17.

insulin for control").

Although Mather does not dispute that he could not drive a truck at the time of his diagnosis, he was entitled to a reasonable accommodation, *Myers v. Hose*, 50 F.3d 278, 282 (4th Cir. 1995). Mather alleges that such an accommodation could have included either: (1) time off to get his diabetes under control and to obtain an exemption; or (2) an alternative position with McElroy while he obtained an exemption. Compl. ¶¶ 9-10. Mather has not alleged that he sought a permanent alternative non-driving position as a reasonable accommodation. *Id*. ¶ 10 (stating that Mather sought to be "back on the road . . . working . . . as an interstate, commercial truck driver").

A reasonable accommodation "presently, or in the *immediate* future, enables the employee to perform the essential functions of the job in question." *Myers*, 50 F.3d at 283 (emphasis added). In addition, a reasonable accommodation may include "reassignment to a vacant position." 42 U.S.C.A. § 12111(9)(b). Given that he asked for a brief time off, Compl. ¶ 8, and obtained an exemption, Compl. ¶ 9, he has sufficiently pled that time off or a brief reassignment would have been the timely reasonable accommodation articulated in *Myers*. Accordingly, Mather has sufficiently pled that he is a qualified individual with a disability. Mather has, therefore, stated a claim under the ADA.

C.    The FMLA Claim

The FMLA entitles an eligible employee to 12 weeks of leave during any 12-month period necessitated by "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a).  It is undisputed that Mather's diabetes was serious enough to make him temporarily unable to be a commercial truck driver.  Thus, to establish that he is entitled to the protections of the FMLA, Mather must prove, *inter alia*, that he was an "eligible employee."  *Rockwell v. Mack Trucks, Inc.*, 8 F.Supp.2d 499, 502 (D. Md. 1998).

McElroy's only argument regarding the FMLA claim is that Mather is not an eligible employee because he was being terminated when he requested leave.  Mem. Supp. Mot. at 11 (*citing Mayo v. Trinity Marine Industries*, Inc., 1999 WL 104421, *3 (unpublished opinion) (plaintiff was not a "qualified employee" under the FMLA because he was either no longer employed or was being terminated by his employer when he requested leave.))  Indeed, the FMLA implicitly defines 'eligible employee' as a current employee.  *See* 29 U.S.C. § 2611(2)(A).

Here, Mather informed McElroy of his diabetes immediately following his diagnosis.  Compl. ¶ 8.  McElroy argues that Mather's complaint indicates that he requested leave after his termination.  As ¶ 8 may be read to allege that the request for

leave was made before termination, Mather has sufficiently pled that he is an eligible employee.[4]  Accordingly, Count II states a claim for an FMLA violation.

D.   The Tortious Interference Claim

To prove intentional interference with economic relations Richardson must show:

> (1) intentional and willful acts; (2) calculated to cause damage to the plaintiff[] in [his] lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.

*Kramer v. Mayor and City Council of Balt.*, 124 Md. App. 616, 637-38 (1999) (*citing Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 71 (1984)).

Mather alleges that McElroy "knowingly, unlawfully and maliciously interfered with Plaintiff's right to[:]" (1) "unemployment benefits by falsely representing to the Maryland Unemployment Commission that Plaintiff was not terminated but, rather, that he quit;" and (2) "receive employment verification by refusing or failing to provide such verification."  Compl. ¶ 30.  Thus, Mather has stated a claim for tortious interference with economic relations.  *See Ellett v. Giant Food, Inc.*, 66 Md.

---

[4] McElroy argues that dismissal is warranted because Mather would not have been able to return to work as a commercial truck driver even if he had been granted 12 weeks of leave under the FMLA.  The complaint does not require that conclusion.

App. 695, 707-08 (1986) (a charge that untruthful statements delayed receipt of unemployment benefits is sufficient to state a claim).

McElroy, however, offers uncontradicted evidence that the Maryland Department of Labor, Licensing and Regulation Division of Appeals, denied Mather's unemployment benefits after questioning his doctor's physician statement and concluding that "until [Mather] can receive some sort of medical authorization to clear him to work . . . benefits must be denied."  Mem. Supp. Mot. Ex A(2) (January 16, 2006 Unemployment Insurance Appeals Decision).  This clear statement raises no genuine issue of material fact about the reason for the denial of unemployment benefits.

Mather has not alleged that the failure to provide documentation delayed or prevented his purchase of a home. Moreover, the purchase of a home is not a "lawful business" with which McElroy could have interfered.  *See Ellett*, 66 Md. App. at 708 (when assessing "lawful business" the court looked to the plaintiff's former employment).  Accordingly, McElroy's motion will be granted as to this claim.

E.   The False Light Claim

     False light is a form of invasion of privacy.  In Maryland "[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light" is liable

if: 1) "the false light in which the other person was placed
would be highly offensive to a reasonable person"; and 2) "the
actor had knowledge of or acted in reckless disregard as to the
falsity of the publicized matter and the false light in which the
other would be placed." *Bagwell v. Peninsula Reg'l Med. Ctr.*,
106 Md. App. 470, 513-14 (1995) (*citing* Restatement (2d) Torts §
652E).  It is clear that a defendant to a false light claim is
entitled to judgment as a matter of law if: (1) the statement is
true, or (2) "the plaintiff consented to the publication of the
statement." *Id*. at 514.

Mather alleges that he was included in an advertising video
showing him as "a respected, satisfied and well-treated
employee." Compl. ¶ 34.  Indeed, Mather alleges that he was
included in the video because of his "stellar" job performance.
*Id*. ¶ 7.  Mather further alleges that upon his termination he no
longer felt that he was a respected and well-treated employee.
*Id*. ¶ 35.

Use of a promotional video, in which Mather had originally
agreed to appear, cannot be considered placing him in a false
light "highly offensive to a reasonable person" because it showed
him to be a "respected, well-treated, and/or satisfied employee
of [McElroy]." Compl. ¶ 36.  Moreover, as his inclusion in the
video was a reward for good job performance, he has consented to
its creation.  Accordingly, the allegations in Count IV fail to

state a claim upon which relief can be granted.

III. Conclusion

     For the reasons discussed above, the motion to dismiss will be granted as to Count III and IV and denied as to Counts I and II.


<u>April 12, 2007</u>                    <u>          /s/              </u>
Date                                 William D. Quarles, Jr.
                                     United States District Judge